UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROYCE DENTON McLIN

CIVIL ACTION

VERSUS

NUMBER 13-538-SDD-RLB

JASON GERALD ARD, IN HIS CAPACITY
AS SHERIFF OF LIVINGSTON PARISH,
ET AL.

## RULING

Before the Court is Defendants', James R. Norred, Jr., Cynthia G. Wale, and Chance McGrew Parent (collectively "Defendants") *Motion to Dismiss*[1] on the grounds of Qualified Immunity or alternatively Motion to Dismiss Plaintiff's vicarious liability claims. For the reasons that follow, the Defendants' Motion is GRANTED.

## I. FACTUAL BACKGROUND

Plaintiff, Royce Denton McLin, brings this action pursuant to 42 USC § 1983 and § 1988 alleging violations of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.[2] Plaintiff contends that his Constitutional rights were violated by the Defendants, members of the Livingston Parish Council, when the Defendants swore out criminal complaints for Criminal Defamation[3] which resulted in the issuance of three (3) misdemeanor arrest warrants. Upon learning of the warrants, Plaintiff voluntarily surrendered to the Livingston Parish Sherriff.[4] Plaintiff alleges that the "summons remained extant" for four (4) months before ultimately being rejected by the

---
[1] Rec. Doc. 2.
[2] Plaintiff also brings pendant State Law claims arising under Louisiana Civil Code Articles 2315, 2316, 2317, and 2320.
[3] La. R.S. 14:47.
[4] Rec. Doc. 1; *Complaint* ¶¶13 & 57.

1

Assistant District Attorney.[5] Essentially, the Plaintiff is claiming that he was maliciously prosecuted by the Defendants because of anonymous Facebook posts critical of the movants, which were ultimately traced to the Plaintiff. It is well settled that a § 1983 malicious prosecution claim does not implicate the Fourteenth Amendment's substantive due process standards.[6] However, the Fourth Amendment prohibition against unreasonable searches and seizures can be the basis of a § 1983 malicious prosecution claim.[7] Likewise, prosecution in retaliation for free speech violates the First Amendment and can be the basis of § 1983 liability.[8]

Plaintiff contends that his "receipt of a misdemeanor summons comports with an arrest" for the purpose of maintaining his constitutional tort claims.[9] Plaintiff claims that this "arrest" was based on false warrant affidavits in violation of the Fourth Amendment. Plaintiff claims that this allegedly unlawful "arrest" was made in retaliation for his exercise of First Amendment free speech. The Plaintiff makes conclusory allegations of a Fifth Amendment violation but pleads no facts tending to support a Fifth Amendment claim.[10] Plaintiff's Fifth Amendment claims against the movants, if any, are not addressed herein.

## II. LAW AND ANALYSIS

The first step in analyzing claims brought pursuant to 42 USC §1983 is to identify the specific constitutional right allegedly infringed. While Section 1983 provides a

---

[5] Rec. Doc. 1; Complaint ¶ 58.
[6] *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), *reh'g denied,* 510 U.S. 1215, 114 S.Ct. 1340, 127 L.Ed.2d 688 (1994).
[7] *Albright, Id.* 510 U.S. at 274–75.
[8] *Hartman v. Moore,* 547 U.S. 250, 256, 126 S.Ct. 1695, 1701, 164 L.Ed 2d 441 (2006).
[9] Rec. Doc. 1; Complaint ¶ 59. Plaintiff cites *State v Droulia,* 692 So.2d 1330 (La. App. 4th Cir. 1997) which does not stand for the proposition advanced by the Plaintiff.
[10] Pleadings must show specific, well-pleaded facts, not mere conclusory allegations. Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir.1992).

federal cause of action for the "deprivation of any rights, privileges or immunities secured by the Constitution and laws" against any person acting under color of State Law, the doctrine of qualified immunity shields government officials from liability for claims against them in their individual capacities provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[11]

### A.  Qualified Immunity

The doctrine of qualified immunity serves to shield government officials from harassment, distraction, and liability when they perform their duties reasonably, and it applies regardless of whether the official's error is a "mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Because qualified immunity is "immunity from suit rather than a mere defense to liability," the qualified immunity question should be resolved at the earliest possible stage in the litigation. "Courts have discretion to decide which prong of the qualified-immunity analysis to address first."[12]

In this case, the Court will first "consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the [defendant's] conduct violated a constitutional right."[13] Plaintiff's *Complaint* identifies two Constitutional violations. First, Plaintiff alleges that misdemeanor arrest warrants were the result of materially false and misleading affidavits of the movants, in violation of the Fourth

---

[11] *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).
[12] *Morgan v. Swanson*, 659 F.3d 359, 367 (5th Cir. 2011) cert. denied, 132 S. Ct. 2740, 183 L. Ed. 2d 614 (U.S. 2012) and cert. denied, 132 S. Ct. 2740, 183 L. Ed. 2d 614 (U.S. 2012), citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).
[13] *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001); *Price v. Roark*, 256 F.3d 364, 369 (5th Cir.2001); *Spruill v. Watson*, 157 F. App'x 741, 743 (5th Cir. 2005); *Murray v. Earle*, 405 F.3d 278, 285 (5th Cir. 2005).

Amendment. Second, Plaintiff asserts that his "arrest" was retaliation for his exercise of First Amendment free speech.

If a violation of a Constitutional right is established, the Court must decide whether the defendant's actions "were objectively reasonable in light of clearly established law at the time of the conduct".[14]

### B. Fourth Amendment

The Court is troubled by the fact that Plaintiff was not "detained" in the traditional sense of the word. While Plaintiff makes conclusory allegations[15] of false arrest and unlawful detention, he "specifically alleges his receipt of a misdemeanor summons comports with an arrest for all material purposes related to these proceedings."[16] Plaintiff makes allegations of an allegedly unconstitutional search and seizure of personal property from his home;[17] however, the property search and seizure is not attributable to movants. Thus, only the allegedly unconstitutional "arrest" is addressed herein.

The Fourth Amendment violation attributed to movants is their allegedly false and misleading criminal complaints which ultimately resulted in the issuance of a misdemeanor arrest warrant for the Plaintiff. Plaintiff alleges that the movants' criminal complaints were the result of "prior investigation,"[18] which included a *subpoena* to Facebook and Charter Communications and a warrant search of the Plaintiff's residence and seizure of Plaintiff's computer, which revealed that the anonymous

---

[14] *Freeman v. Gore*, 483 F. 3d 404, 411 (5th Cir. 2007).
[15] "[M]ore than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992).
[16] Rec. Doc. 1; *Complaint* ¶ 59.
[17] Rec. Doc. 1; *Complaint* ¶ 48 – 51.
[18] Rec. Doc. 1; *Complaint* ¶ 55.

4

Facebook post made the subject of the criminal defamation[19] complaint originated from one of the "laptop computers seized from Plaintiff's home."[20] Plaintiff alleges that movants herein "obtained the assistance of the Livingston Parish Sheriff's Office"[21] and that movant Parent's "insistence"[22] provoked LPSO Detective Ballard to initiate *subpoenas* directed to Facebook and Charter Communications.

The Constitution does not guarantee that only the guilty will be arrested.[23] An arrest based upon a valid warrant cannot form the basis of a Fourth Amendment claim.[24] The Fourth Amendment guarantees the right to be free from arrest without probable cause.[25] Furthermore, if a warrant is issued by an intermediary magistrate judge, the causal chain is broken and the initiating party is insulated.[26] An independent intermediary breaks the causal connection in a false arrest case unless it is shown that the intermediary was in some way misled or misinformed as to the facts supporting the warrant.[27] Here, the Plaintiff maintains that probable cause was lacking because the criminal complaints sworn by the movants were false and misleading. The record is not sufficiently developed to allow the Court to make a determination as to whether or not probable cause existed for the search and/or arrest warrants.

Assuming that the warrants were without probable cause, there is no Fourth Amendment violation if there was no arrest. "In this Circuit, whether an arrest has occurred depends upon the nature and degree of the intrusion under all the facts of the

---

[19] La.R.S. 14:47.
[20] Rec. Doc. 1; *Complaint* ¶ 52.
[21] Rec. Doc. 1; *Complaint* ¶ 45.
[22] Rec. Doc. 1; *Complaint* ¶ 47. Parent also allegedly filed a report with the LPSO on April 20, 2012 regarding an anonymous Facebook comment.
[23] *Baker v. McCollan*, 443 U.S. 137, 145, 99S.Ct. 2689, 61 L.Ed. 2d 433 (1979).
[24] *Smith v. Gonzales*, 670 F2d 522,526 (5th Cir. 1982).
[25] *Neese v. Jefferson County, Texas*,15 F3d 179 (5th Cir. 1994).
[26] *Hand v. Gary*, 838 F2d 1420, 1427 (5th Cir. 1988).
[27] *Id.* at 1428.

5

particular encounter."[28] It is axiomatic, that not every stop and brief detention constitutes an arrest. In this case, the detention was the Plaintiff's voluntary surrender at the Livingston Parish Sheriff's Office.[29] Notably, absent from the *Complaint* is any allegation that the Plaintiff was restrained, hand cuffed, jailed, or even made to defend the charges.

There is no clear directive from the Fifth Circuit regarding the nature and degree of detention that is required to state a Fourth Amendment § 1983 Civil Rights violation. In *dicta*, the Fifth Circuit has observed an arrest is not unconstitutional if the accused "voluntarily surrendered" or there was probable cause.[30] The Court noted that "the U.S. Constitution is not violated simply because [the accused] voluntarily surrendered to the sheriff because of a lie."[31] Other districts have held that a criminal defendant suffers no constitutional injury when he is released after his encounter with the state without any requirement that he pay bail or limit his travels.[32] Other Circuits have held that, to maintain a § 1983 claim under the Fourth Amendment, there must be deprivation of liberty or a seizure effected pursuant to legal process.[33] Based on the landscape of Fourth Amendment law, the Court concludes that the Plaintiff has not stated a claim for violation of his Fourth Amendment rights by the D defendant-movants. Inasmuch as the Plaintiff's liberty was not meaningfully impaired, the Court finds that the Plaintiff was not seized for purposes of the Fourth Amendment. The Court expresses no opinion on whether the search of the Plaintiff's home and seizure of his electronics states a Fourth

---

[28] *United States v. Vargas*, 643 F.2d 296, 298 (5th Cir. 1981).
[29] Rec. Doc. 1; *Complaint* ¶¶ 57 & 64.
[30] *Neese v. Jefferson County, Texas*, 15 F.3d 179, (5th Cir. 1994).
[31] *Id.*
[32] *Torres*, 966 F.Supp. at 1364; *Maldonado v. Pharo*, 940 F.Supp. 51, 54 (S.D.N.Y.1996); *Subirats v. D'Angelo*, 938 F.Supp. 143, 148–49 (E.D.N.Y.996); *Niemann v. Whalen*, 911 F.Supp. 656, 670 (S.D.N.Y.1996).
[33] *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.1995).

6

Amendment claim. Finding no Fourth Amendment violation, the Movants' *Motion to Dismiss* the Plaintiff's Fourth Amendment § 1983 Civil Rights violation on the grounds of qualified immunity is GRANTED.

### C. First Amendment

To prevail on a First Amendment retaliation claim, the plaintiff must prove that: (1) he was engaged in a constitutionally protected activity, (2) that the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity, and (3) that the defendant's adverse actions were substantially motivated by the plaintiff's exercise of constitutionally protected conduct.[34]

The freedom to criticize public officials is unquestionably protected by our Constitution, and the First Amendment prohibits government officials from taking retaliatory action against individuals exercising this protected right.[35] The Plaintiff's *Complaint* satisfies the first element of a First Amendment retaliation claim. Plaintiff's criticism of government officials posted on a social media site is constitutionally protected activity. Taking the well-pleaded facts as true and viewed in a light most favorable to the Plaintiff, the *Complaint* also satisfies the third prong of a First Amendment retaliation claim; namely, the Defendants' adverse actions were substantially motivated by the Plaintiff's exercise of constitutionally protected conduct. The question then becomes whether the Defendants' actions caused the Plaintiff to

---

[34] *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir.2002).
[35] Criticism of public officials lies at the very core of speech protected by the First Amendment. *New York Times Co. v. Sullivan*, 376 U.S. 254, 269-70, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (stating that this country enjoys "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials"); See also, *Colson v. Grohman*, 174 F.3d 498, 507 (5th Cir. 1999).

7

suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.

Reprisal in the form of a criminal arrest and/or prosecution violates the First Amendment.[36] As noted above, the Plaintiff herein was not prosecuted, nor was he arrested or seized within the meaning and protection of the Fourth Amendment. The question thus becomes: Is the fact that the Plaintiff was cited with a misdemeanor summons, and thereafter voluntarily surrendered to the Sherriff's office on charges that were dismissed 4 months later, an "injury that would chill a person of ordinary firmness"? The Court thinks not. The focus is upon whether a person of ordinary firmness would be chilled, rather than whether the particular Plaintiff is chilled.[37] Did these Defendants, by their actions, cause an injury sufficient to chill the speech of a person of ordinary firmness? The analysis necessarily turns on the nature and extent of the injury. Reading the Plaintiff's *Complaint* liberally, the injury in this case arguably includes: learning the Plaintiff's identity as the anonymous poster,[38] swearing out a criminal complaint against the Plaintiff, and the resulting issuance of the misdemeanor summons which remained extant for four months before the charges were ultimately dropped.

The seminal case in this Circuit on the question of injurious acts sufficient to maintain a First Amendment retaliation claim is *Keenan v Tejada*.[39] After expressing criticism of the local Constable's office, the plaintiffs in *Keenan* were detained "for an inordinate period of time" at a traffic stop by officers with guns drawn and "ultimately

---

[36] *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 1701, 164 L.Ed.2d 441 (2006).
[37] *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001).
[38] The Court does not consider the search of Plaintiff's home and the seizure of his computers and electronics as injuries attributable to the acts of the Defendant-movants presently before the Court.
[39] 290 F 3d 252 (5th Cir. 2002).

8

being issued only a minor traffic citation that was later dismissed". Mr. Keenan, one of the named plaintiffs, was charged with "deadly conduct," a state law misdemeanor and was forced to spend thousands of dollars to exonerate himself at trial. Plaintiff also suffered the seizure of his handgun and revocation of his concealed handgun license.[40] Reversing the District Court, the Fifth Circuit held that there was a sufficient showing of injury to maintain a First Amendment retaliation claim. Unlike the facts in *Keenan*, absent in this case is any meaningful detention or prosecution.

The Eastern District of Texas recently surveyed the case law addressing the types of injuries found sufficient to chill the speech of a person of ordinary firmness.[41] That Court stated:

> Courts have found the following acts sufficiently severe to chill the speech of a person of ordinary firmness: drawing guns on plaintiffs during a routine traffic stop and separately charging plaintiffs with "deadly conduct";[6] refusing to grant a land permit in violation of local laws;[7] public release of "irrelevant, humiliating, and confidential" details of a rape of the plaintiff;[8] and arresting plaintiff, handcuffing him, placing him in leg irons, and holding him overnight in the coldest cell in the jail.[9] On the other hand, courts have found the following acts not sufficient to chill the speech of a person of ordinary firmness: calling the manager of a state office where the plaintiff was doing research in order to litigate his case against the federal government and encouraging the manager to not allow plaintiff to use the office's resources for that purpose;[10] preventing access to newsworthy information about a university athletics program;[11] criticism of a student's speech and presentation in a speech class;[12] a brief traffic stop resulting in a speeding ticket, for which probable cause existed;[13] falsifying a police report, refusal to interview witnesses, and failure to enforce a temporary restraining order;[14] and failure to investigate plaintiff's criminal complaint and failure to enforce a protection order.[15]

This Court concludes that, although the conduct of the Defendant-movants is troubling, the Plaintiff did not suffer a harm caused by these movants sufficient to chill

---

[40] *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002).
[41] *Bailey v. City of Jasper, Tex.*, 1:12-CV-153, 2012 WL 4969126 (E.D. Tex. Sept. 24, 2012) report and recommendation adopted, 1:12-CV-153, 2012 WL 4970809 (E.D. Tex. Oct. 17, 2012), appeal dismissed (Jan. 18, 2013).

9

the speech of a person of ordinary firmness. The Court is mindful that the Defendant movants seemingly get a "pass" because the justice system worked as it should, in that the Plaintiff was not detained; the charges, which were based on an unconstitutional statute[42], were ultimately dismissed; and there is no allegation that the Plaintiff incurred costs to defend the questionable charges. Finding no First Amendment violation, the Movants' *Motion to Dismiss* the Plaintiff's First Amendment § 1983 Civil Rights violation on the grounds of qualified immunity is GRANTED.

### III. CONCLUSION

For the reasons herein, the Defendants' *Motion to Dismiss* Plaintiff's First Amendment and Fourth Amendment civil rights claims is GRANTED and the Plaintiff's 42 USC § 1983 First Amendment and Fourth Amendment claims against Defendants, James R. Norred, Jr., Cynthia G. Wale and Chance McGrew Parent, are hereby DISMISSED with prejudice.

Baton Rouge, Louisiana the 28 day of October, 2013.

*[signature]*
SHELLY D. DICK, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[42] *Simmons v City of Mamou*, WL 912858 (W.D. La., 2012) finding La. R.S. 14:47 unconstitutional as applied under similar circumstance.