UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROYCE DENTON McLIN                           CIVIL ACTION

VERSUS                                            NUMBER 13-538-SDD-RLB

JASON GERALD ARD, IN HIS CAPACITY
AS SHERIFF OF LIVINGSTON PARISH,
ET AL.

### RULING

Before the Court is a *Motion to Dismiss Pursuant to Federal Rule of Procedure 12(B)(6)*[1] brought by Defendants Jason Ard, the Sheriff of Livingston Parish, and Livingston Parish Deputy Sheriffs Benjamin Ballard, Jack Alford, Stan Carpenter, Brian Smith, Bonita Sager and William Dorsey ("LPSO Defendants"). For the reasons that follow, the Court grants in part and denies in part the Defendants' Motion.

I.    **FACTUAL BACKGROUND**

Plaintiff, Royce Denton McLin, brings this action pursuant to 42 U.S.C. § 1983 and § 1988 alleging violations of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.[2] Plaintiff contends his constitutional rights were violated by the LPSO Defendants when they obtained and executed search warrants to investigate an alleged violation of La. R.S. 14:47[3] and, thereafter, obtained a Misdemeanor Summons alleging three counts of violating La. R.S. 14:47.[4]

---

[1] Rec. Doc. 7.
[2] Plaintiff also brings pendant State Law claims arising under Louisiana Civil Code Articles 2315, 2316, 2317, and 2320.
[3] La. R.S. § 14:47 has been held to be unconstitutional "insofar as it punishes public expression about public officials." *State v. Defley*, 395 So. 2d 759, 761 (La. 1981) (citing *State v. Snyder*, 277 So. 2d 660 (La. 1973); *Garrison v. State of Louisiana*, 379 U.S. 64 (1964); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)).
[4] The Plaintiff uses the "misdemeanor summons" and "arrest warrant" interchangeably in his *Complaint*. See Rec. Doc. 1, ¶¶ 7, 9, 36, etc.

1

The Plaintiff alleges that, on April 12, 2012, Livingston Parish Council member, Chance Parent, filed a report with Livingston Parish Sheriff's Office ("LPSO") alleging that an anonymous Facebook subscriber posted disparaging comments about Council members Parent, Norred, and Wale.[5] Based on Parent's complaint, LPSO Detective Ballard obtained a *subpoena duces tecum* for records directed to Facebook and Charter Communications. The documents obtained from Facebook and Charter Communication "linked [Plaintiff's] home address to the account used for the anonymous comments."[6] Thereafter, Detective Ballard obtained a search warrant to search Plaintiff's home. LPSO Detectives Ballard and Alford searched the Plaintiff's home and seized various computers and electronic devices which were sent to the Louisiana State Police ("LSP") for forensic analysis. The LSP's forensic analysis revealed that the subject anonymous posts originated from a computer seized from the Plaintiff's home.

On August 16, 2012, LPSO Defendants Ballard, Alford, Carpenter, Smith, Sager, and Dorsey allegedly met with the aforementioned Livingston Parish Council members who swore out criminal complaints, which resulted in the issuance of a Misdemeanor Summons charging three counts of violating La. R.S. § 14:47. Later the same day, upon learning of the charges, Plaintiff voluntarily surrendered to the Livingston Parish Sherriff.[7] The misdemeanor charges were dismissed by the Livingston Parish District Attorney's Office four (4) months later on December 19, 2012.[8]

The Plaintiff claims that he was maliciously prosecuted under an unconstitutional statute because of his exercise of First Amendment protected speech. Plaintiff asserts

---

[5] Previously dismissed as Defendants (Rec. Doc. 6).
[6] Rec. Doc. 1, ¶ 48.
[7] Rec. Doc. 1, *Compl.*, ¶¶ 13, 57.
[8] Rec. Doc. 1, *Compl.*, ¶¶ 7, 58.

liability under 42 U.S.C. § 1983 stemming from alleged violations of the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.[9]

Plaintiff contends that his "receipt of a misdemeanor summons comports with an arrest" for the purpose of maintaining his constitutional tort claims.[10] Plaintiff claims that this "arrest" was based on false warrant affidavits in violation of the Fourth Amendment. Plaintiff claims that this allegedly unlawful "arrest" was made in retaliation for his exercise of First Amendment free speech. The Plaintiff makes conclusory allegations of a Fifth Amendment violation but pleads no facts tending to support a Fifth Amendment claim.[11]

## II.   LAW AND ANALYSIS

The first step in analyzing claims brought pursuant to 42 U.S.C. § 1983 is to identify the specific constitutional right allegedly infringed. While section 1983 provides a federal cause of action for the "deprivation of any rights, privileges or immunities secured by the Constitution and laws" against any person acting under color of State Law, the doctrine of qualified immunity shields government officials from liability for claims against them in their individual capacities provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[12]

---

[9] Rec. Doc. 1, ¶ 89.
[10] Rec. Doc. 1, Compl., ¶ 59. Plaintiff cites *State v. Droulia*, 692 So. 2d 1330 (La. App. 4th Cir. 1997), which does not stand for the proposition advanced by the Plaintiff.
[11] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).
[12] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

3

### A.     Fifth and Fourteenth Amendment Claims

As previously noted by this Court, it is well settled that a § 1983 malicious prosecution claim does not implicate the Fourteenth Amendment's substantive due process standards.[13] Accordingly, the Plaintiff's Fourteenth Amendment claims against the LPSO Defendants are dismissed for failure to state a claim for which relief can be granted. Plaintiff makes conclusory allegations that the actions of the Defendants violated the Fifth Amendment. The Fifth Amendment provides that "[n]o person shall be compelled in any criminal case to be a witness against himself." The Plaintiff's *Complaint* sets forth no facts that would support a claim of a Fifth Amendment infringement. Plaintiff has not briefed any Fifth Amendment claim. Accordingly, the Plaintiff's Fifth Amendment claims are dismissed.

### B.     First Amendment

Retaliatory prosecution for the exercise of First Amendment protected speech can be the basis of a § 1983 liability.[14] This Court has already ruled that being cited with a misdemeanor summons, followed by a voluntary surrender to the Sherriff's office on charges that were dismissed four months later, is not an "injury that would chill a person of ordinary firmness."[15] That is the law of the case. Plaintiff urges a different result contending that this "Court's prior decision was founded upon an erroneous conclusion that the Plaintiff was not 'arrested or seized within the meaning and protection of the Fourth Amendment.'"[16] The Court declines to reconsider its prior findings in order to reach a different result as to these Defendants.

---

[13] *Albright v. Oliver,* 510 U.S. 266 (1994).
[14] *Hartman v. Moore,* 547 U.S. 250, 256 (2006).
[15] *Keenan v. Tejeda,* 290 F.3d 252, 258 (5th Cir. 2002).
[16] Rec. Doc. 9, p. 9.

4

The *Albright*[17] case, upon which Plaintiff heavily relies, was first and foremost not advanced nor decided on Fourth Amendment unconstitutional seizure grounds,[18] and secondly, *Albright* is factually distinct. Plaintiff Albright was subject to arrest; he surrendered, was released after posting bond and was prohibited, as a condition of his release, from leaving the State without the permission of the Court. It is uncertain whether the Plaintiff in this case was actually subject to arrest. Plaintiff's *Complaint* uses the terms "arrest warrant" and "misdemeanor summons" interchangeably.[19] There is a distinction between an "arrest warrant," which subjects a person to imminent deprivation of liberty, as compared to a summons, which is an order to appear in Court. There are no allegations that conditions or limitations were placed on the Plaintiff's continued liberty, i.e. no bond requirement, no order to remain in the jurisdiction, etc. For these reasons and the reasons previously assigned[20], the Court finds that the Plaintiff suffered no injurious acts sufficient to maintain a First Amendment retaliation claim.

C. **Fourth Amendment**

1. Unconstitutional Arrest

In dismissing the Plaintiff's claims against the Parish Council Defendants, the Court found that the "misdemeanor summons" did not constitute an unconstitutional seizure under the Fourth Amendment. That is the law of the case, and the Court

---

[17] *Albright*, 510 U.S. at 266.
[18] Writing for the majority, Justice Rehnquist noted, "Petitioner's claim before this Court is a very limited one. He claims that the action of respondents infringed his substantive due process right to be free of prosecution without probable cause. He does not claim that Illinois denied him the procedural due process guaranteed by the Fourteenth Amendment." *Id.* at 271. Writing for the plurality, Justice Ginsburg also noted that ". . . in his presentations before this Court, Albright deliberately subordinated invocation of the Fourth Amendment and pressed, instead, a substantive due process right to be free from prosecution without probable cause." *Id.* at 277.
[19] See *supra* note 3.
[20] Rec. Doc. 6.

5

declines to reconsider its holding. Accordingly, the Plaintiff's Fourth Amendment claims of unconstitutional seizure, as to the alleged "arrest" are DISMISSED as to the LPSO Defendants.

2. Unconstitutional Search

The Court did not previously reach the issue of whether the search of the Plaintiff's home violated the Fourth Amendment. The LPSO Defendants urge qualified immunity arguing that the search was "objectively reasonable" because the search was made pursuant to a warrant. LPSO Defendants argue that "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner."[21] However, the Plaintiff correctly points out that "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness."[22] Deference to a judicial officer's issuance of a warrant is not absolute. Rather, "the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based."[23] Plaintiff pleads "on information and belief" that the "warrants arose from the false statements" of the LPSO Defendants.[24] Although the Plaintiff's allegations that "false statements" were used to obtain warrants are conclusory, and therefore may not pass the pleading muster required to state a claim under *Twombly*, this deficiency is not fatal to the Plaintiff's claims. For the following

---

[21] *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012).
[22] *Id.*
[23] *United States v. Leon*, 468 U.S. 897, 914 (1984); *Franks v. Delaware*, 438 U.S. 154 (1978).
[24] Rec. Doc. 1, ¶ 75.

6

reasons, the Court concludes that Defendants Ballard and Alford's search of the Plaintiff's home was not objectively reasonable.

While qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments"[25] it does not shield law enforcement from civil rights liability where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue."[26] The question in this case is whether a reasonable well trained officer would have applied for a search warrant to investigate an alleged violation of an unconstitutional statute. In *Malley v. Briggs*, the Supreme Court extended "the same standard of reasonableness that [applies] in the context of a suppression hearing,"[27] to determine whether qualified immunity is to be afforded an officer's request for a warrant.

The terms of the Fourth Amendment, applicable to the States by virtue of the Fourteenth Amendment, are familiar:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The basic purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."[28] As construed and applied by the United States Supreme Court, "when the State's reason to believe incriminating evidence will be found becomes sufficiently great, the invasion of

---

[25] *Messerschmidt*, 132 S. Ct. at 1249; *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).
[26] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
[27] *Id.*
[28] *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528 (1967).

7

privacy becomes justified and a warrant to search and seize will issue."[29] A search warrant is proper if it is demonstrated that "there is probable cause to believe that fruits, instrumentalities, or evidence of crime is located" on the premises to be searched.[30] Thus, "'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness."[31]

"The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the [place to be searched] offend against the law."[32]

"The Fourth Amendment imposes limits on search-and-seizure powers in order to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals."[33] This Court is called to "balance the extent of the intrusion against the need for it."[34] The standard of reasonableness is controlling.[35] Even when the search has been authorized by a warrant, as in this case, the Supreme Court directs that the search "is 'reasonable' only when there is 'probable cause' to believe that [evidence of a crime] will be uncovered in a particular dwelling."[36] "The warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest . . . . If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted

---

[29] *Fisher v. United States*, 425 U.S. 391, 400 (1976).
[30] *Zurcher v. Stanford Daily*, 436 U.S. 547, 550 (1978).
[31] *Camara*, 387 U.S. at 534.
[32] *Zurcher*, 436 U.S. at 557; *Carroll v. United States*, 267 U.S. 132, 158-59 (1925).
[33] *United States v. Martinez-Fuerte*, 428 U.S. 543, 554-55 (1976) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975); *United States v. Ortiz*, 422 U.S. 891, 895 (1975); *Camara*, 387 U.S. at 528).
[34] *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).
[35] *Camara*, 387 U.S. at 539.
[36] *Id.* at 534-35.

search warrant."[37] Thus, 'probable cause' is the standard by which the constitutional mandate of reasonableness is to be determined. "To apply this standard, it is obviously necessary first to focus upon the governmental interest, which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen."[38]

Plaintiff argues that it is objectively unreasonable to seek, obtain and thereafter execute a search warrant to seek evidence of the commission of a "crime" that is, in fact and as matter of long settled law, not a crime. The Court agrees. As a matter of law, there could be no articulable reasonable suspicion that evidence of a crime existed, when "criminal defamation" is not a crime. Without a probable cause to believe that a crime had been committed, there could be no objectively reasonable basis for a warrant to search for evidence of the non-crime. In this Court's reasoned opinion, there is no legitimate government interest in enforcing a penal statute that was declared unconstitutional as applied to punishing public expression about public officials.[39] The sanctity of the Plaintiff's dwelling and his privacy outweigh any governmental interest in securing evidence of the violation of an unconstitutional statute.

## III.    CONCLUSION

For the reasons herein, the LPSO Defendants' *Motion to Dismiss* Plaintiff's First Amendment and Fourteenth Amendment civil rights claims are GRANTED. The LPSO Defendants' *Motion to Dismiss* Plaintiff's Fourth Amendment civil right claim asserting an unconstitutional arrest is GRANTED, but the LPSO Defendants' *Motion to Dismiss*

---

[37] *Id.* at 539.
[38] *Id.*
[39] La. R.S. § 14:47 has been held to be unconstitutional "insofar as it punishes public expression about public officials." *State v. Defley*, 395 So. 2d 759, 761 (La. 1981) (citing *State v. Snyder*, 277 So. 2d 660 (La. 1973); *Garrison v. State of Louisiana*, 379 U.S. 64 (1964); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)).

9

Plaintiff's civil rights claim that the search of his home violated the Fourth Amendment is DENIED.

Baton Rouge, Louisiana the 10 day of February, 2014.

*Shelly D. Dick*
SHELLY D. DICK, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA